**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRITI BARMAN, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1)  Violation of § 14 (e) of the Securities Exchange Act of 1934 |
| ZOGENIX, INC., CAM L. GARNER, LOUIS C. BOCK, JAMES B. BREITMEYER, STEPHEN FARR, CAROLINE M. LOEWY, ERLE T. MAST, MARY E. STUTTS, RENEE TANNENBAUM, DENELLE J. WAYNICK, and MARK WIGGINS, | (2)  Violation of § 14 (d) of the Securities Exchange Act of 1934 |
| | (3)  Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Priti Barman ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Zogenix, Inc. ("Zogenix" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to UCB S.A. ("Parent") through merger vehicle Zinc Merger Sub, Inc.

("Purchaser") (collectively with "Parent", "UCB") as a result of an unfair process, and to enjoin an upcoming tender off on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an January 18, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, UCB will acquire all of the remaining outstanding shares of Zogenix' common stock at a price of $26.00 per share in cash  (or an aggregate of approximately $1.9 billion), payable at closing plus a non-tradable contingent value right (CVR) worth up to $2.00 per share in cash. As a result, Zogenix will become an indirect wholly-owned subsidiary of UCB.

3.      Thereafter, on February 1, 2022, Zogenix filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Recommendation Statement describes an insufficient process in which the neither the Board, nor anyone on its behalf, conducted an appropriate market check for potentially interested third parties.

5.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement on February 1, 2022, with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Zogenix shares in favor of the Proposed Transaction.  The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed

below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Zogenix, provided by Zogenix to the Company's financial advisors BofA Securities, Inc. ("BofA") and SVB Leerink LLC ("SCB Leerink"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by BofA and SVB Leerink and provided to the Company and the Board.

7. Accordingly, this action seeks to enjoin the Proposed Transaction.

8. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

9. Plaintiff is a citizen of California and, at all times relevant hereto, has been a Zogenix stockholder.

10. Zogenix, is a biopharmaceutical company that develops and commercializes therapies to transform the lives of patients and their families living with rare diseases in the United States. Zogenix is incorporated under the laws of the State of Delaware and has its principal place of business at 5959 Horton Street, Suite 500 Emeryville, CA 94608. Shares of Zogenix common stock are traded on the Nasdaq under the symbol "ZGNX."

11. Defendant Cam L. Garner ("Garner") has been a Director of the Company at all relevant times.

12. Defendant Louis C. Bock ("Bock") has been a director of the Company at all relevant times.

13. Defendant James B. Breitmeyer ("Breitmeyer") has been a director of the Company at all relevant times.

14. Defendant Stephen Farr ("Farr") has been a director of the Company at all relevant times.

15.     Defendant Caroline M. Loewy ("Loewy") has been a director of the Company at all relevant times.

16.     Defendant Erle T. Mast ("Mast") has been a director of the Company at all relevant times.

17.     Defendant Mary E. Stutts ("Stutts") has been a director of the Company at all relevant times.

18.     Defendant Renee Tannenbaum ("Tannenbaum") has been a director of the Company at all relevant times.

19.     Defendant Denelle J. Waynick ("Waynick") has been a director of the Company at all relevant times.

20.     Defendant Mark Wiggins ("Wiggins") has been a director of the Company at all relevant times.

21.     Defendants identified in ¶¶ 11 - 20 are collectively referred to as the "Individual Defendants."

22.     Non-Party Parent is a multinational biopharmaceutical company headquartered in Brussels, Belgium. Parent was founded in 1928. Shares of Parent common stock are traded on the Extronext Brussels Exchange under the symbol "UCB".

23.     Non-Party Purchaser is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

25.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either

1    present in this District for jurisdictional purposes or has sufficient minimum contacts with this

2    District as to render the exercise of jurisdiction over defendant by this Court permissible under

3    traditional notions of fair play and substantial justice.

4           26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Zogenix

5    maintains its principal offices in this district, and each of the Individual Defendants, as Company

6    officers or directors, has extensive contacts within this District.

7    <center>**SUBSTANTIVE ALLEGATIONS**</center>

8    ***Company Background***

9           27.     Zogenix, Inc., a biopharmaceutical company, develops and commercializes

10   therapies to transform the lives of patients and their families living with rare diseases in the United

11   States. The company's lead product candidate is the Fintepla, a low-dose fenfluramine, which is in

12   Phase III clinical trials for the treatment of seizures associated with Dravet syndrome, as well as

13   to treat seizures associated with Lennox-Gastaut syndrome; and that is in Phase II clinical trials

14   for the treatment of other rare epileptic syndromes and diseases. It is also developing MT1621, an

15   investigational therapy for the treatment of a rare genetic disorder called thymidine kinase 2

16   deficiency. Zogenix, Inc. has a collaboration with Tevard Biosciences for the research,

17   development and commercialization of novel gene therapies for Dravet Syndrome and other

18   genetic epilepsies. The Company was formerly known as SJ2 Therapeutics, Inc. and changed its

19   name to Zogenix, Inc. in August 2006. Zogenix, Inc. was incorporated in 2006 and is

20   headquartered in Emeryville, California.

21          28.     The Company's most recent financial performance press release, revealing

22   financial results from the quarter preceding the announcement of the Proposed Transaction,

23   indicated sustained and solid financial performance.  For example, in the November 4, 2021 press

24   release announcing its 2021 Q3 financial results, the Company highlighted such milestones as

25   FINTEPLA® net product sales of $21.4 million and total revenue of $22.6 million in the third

26   quarter, representing quarter-over-quarter increases of 22% and 20%, respectively. Further, the

27

28

1    company announce that it submitted supplemental New Drug Application (sNDA) to the U.S. Food

2    and Drug Administration (FDA) for FINTEPLA in Lennox-Gastaut Syndrome (LGS).

3        29.    Speaking on these positive results, CEO Defendant McFarlane commented on the

4    Company's positive financial results as follows, "In the third quarter, we made significant progress

5    against our corporate objectives in commercial operations and late-stage clinical development

6    programs. We are pleased with the ongoing launch of FINTEPLA in the U.S. and EU and are

7    encouraged with the positive trends that support continued adoption in Dravet syndrome. With the

8    sNDA submitted for LGS, we are moving forward with regulatory submissions for LGS in the EU

9    and a J-NDA in Japan for Dravet syndrome by the end of the year. We are excited to have the

10   opportunity to potentially serve more patients who could benefit from FINTEPLA,"

11       30.    These positive results are not an anomaly, but rather, are indicative of a trend of

12   continued financial success and future potential success by Zogenix.  Clearly, based upon these

13   positive financial results and outlook, the Company is likely to have tremendous future success.

14       31.    Despite this upward trajectory and continually increasing financial results, the

15   Individual Defendants have caused Zogenix to enter into the Proposed Transaction without

16   providing requisite information to Zogenix stockholders such as Plaintiff.

17   ***The Flawed Sales Process***

18       32.    As detailed in the Recommendation Statement, the process deployed by the

19   Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the

20   Individual Defendants and was designed with only one concern in mind – to effectuate a sale of

21   the Company by any means possible.

22       33.    Notably, the Recommendation Statement fails to explain why no market check for

23   potentially interested third parties was conducted by the Board or by either of its financial advisors

24   at any point during the sales process.

25       34.    Next, the Recommendation Statement indicates that while a "Transactions

26   Committee" was created to run the sales process, said committee was composed in part of Directors

27   who are clearly not independent or disinterested – for example Defendant Garner who is  a

28

1   Company Co-Founder and Chairman of the Board. The Recommendation Statement fails to
2   indicate why this committee was not populated solely with Board members who were disinterested
3   and independent. The Recommendation Statement also fails to adequately describe the powers of
4   the Transactions Committee, including if the committee had veto power of potential strategic
5   alternatives.

6       35.   The Recommendation Statement also fails to contain adequate information as to
7   why the Board engaged multiple financial advisors during the sales process. Notably, the
8   Recommendation Statement reveals that for their services regarding the Proposed Transaction,
9   BofA and SVB Leerink will receive $21 million and $19 million, respectively. The
10  Recommendation Statement should contain adequate information as to why such a costly
11  expenditure as the engagement of an additional financial advisor was necessary

12      36.   In addition, the Recommendation Statement is silent as to the nature of the
13  confidentiality agreements entered into between the Company and potentially interested third
14  parties, including UCB, throughout the sales process, if any, and whether these agreements differ
15  from each other, and if so in what way. The Recommendation Statement also fails to disclose all
16  specific conditions under which any standstill provision contained in any entered confidentiality
17  agreement entered into between the Company and any potentially interested third parties, including
18  UCB, throughout the sales process, if any, would fall away.

19      37.   It is not surprising, given this background to the overall sales process, that it was
20  conducted in a completely inappropriate and misleading manner.

21  ***The Proposed Transaction***

22      38.   On January 19, 2022, Zogenix and UCB issued a joint press release announcing the
23  Proposed Transaction. The press release stated, in relevant part:

24      **BRUSSELS and EMERYVILLE, Calif.,** Jan. 19, 2022 /PRNewswire/ --
        Regulated information – Inside information – UCB (Euronext: UCB) and Zogenix
25      (NASDAQ: ZGNX) announced today that the companies have entered into a
        definitive agreement under which UCB would acquire Zogenix, Inc., a global
26      biopharmaceutical company commercializing and developing therapies for rare
        diseases. Under the terms of the agreement, UCB will commence a tender offer to
27

28

purchase all outstanding shares of Zogenix for a purchase price per share of US$ 26.00 in cash at closing, plus a contingent value right (CVR) for a potential cash payment of US$ 2.00 upon EU approval by December 31, 2023, of FINTEPLA® as an orphan medicine for treatment of Lennox-Gastaut syndrome (LGS). The upfront consideration represents a 72% premium to Zogenix shares based on the 30-day volume weighted average closing stock price of Zogenix prior to signing. The total transaction is valued at up to approximately US$ 1.9 billion / € 1.7 billion.

The board of directors of both companies have unanimously approved the transaction, the closing of which remains subject to the tender of shares representing at least a majority of the total number of Zogenix's outstanding shares, receipt of required antitrust clearances, and other customary conditions.

The transaction will broaden and build upon UCB's role as a leader in, and our continued commitment to, addressing unmet needs of people living with specific or rare forms of epilepsy, in particular, adding FINTEPLA® to UCB's existing product line. FINTEPLA® has been approved by the U.S. Food and Drug Administration (FDA)1 and the European Medicines Agency (EMA)2 and is under regulatory review in Japan3, for the treatment of seizures associated with Dravet syndrome in patients two years of age and older. Zogenix is also pursuing indications for the use of FINTEPLA® in the treatment of seizures associated with additional rare epilepsies, Lennox-Gastaut syndrome (LGS) and CDKL5 Deficiency Disorder (CDD)4. Zogenix has submitted a Type II Variation Application to the EMA5, and the U.S. FDA recently accepted for filing Zogenix's supplemental New Drug Application (sNDA)6, granting Priority Review, for LGS. Beginning in childhood, Dravet syndrome and Lennox-Gastaut syndrome are two of the most devastating and life-long forms of epilepsy 7,8,9,10.

"The proposed acquisition of Zogenix reinforces UCB's sustainable patient value strategy and continued commitment to addressing unmet needs of people living with epilepsy with an increasing focus on those living with specific or rare forms of epilepsy, where few options exist. Complementing UCB's existing therapeutic offerings, the Zogenix acquisition provides UCB with an approved medicine for a life-threatening, rare infant- and childhood-onset epilepsy marked by frequent and severe treatment-resistant seizures, that are particularly challenging to treat," said Charl van Zyl, Executive Vice President, Neurology & Head of Europe/International Markets, UCB. "Utilizing our deep expertise, experience and global capabilities, we plan to accelerate access for patients to the treatment. We look forward to welcoming the Zogenix team to UCB, benefiting from their insights and working together to maximize the reach and impact of their medicines for the benefit of as many people as possible."

"We are delighted to announce UCB's proposed acquisition of Zogenix, recognizing the value of our lead medicine, both for the important role it has already begun to play for Dravet patients and their caregivers, and for its potential to help many others in the future," said Stephen J. Farr, PhD, President and Chief Executive

- 8 -

Officer of Zogenix. "We are excited for the potential opportunities ahead of us, working together to accelerate our mission and progress to improve the care of patients in need of new therapies. We believe this transaction is in the best interests of both patients and our shareholders."

**Strategic Benefits**

- Builds on UCB's continued epilepsy ambitions: Acquisition provides medicine that complements UCB's existing symptomatic treatments, bringing significant and differentiated value to patients suffering from Dravet syndrome and, if approved, from seizures associated with Lennox-Gastaut syndrome and potentially other rare epilepsies.
- Expands benefits for patients globally: UCB brings an established global footprint, together with deep research and development, commercial, medical, and regulatory expertise in epilepsy, which will be utilized to rapidly advance and optimize the availability of these new treatments and reach additional patients.
- Enhances future epilepsy pipeline and strategic priorities in rare/orphan diseases: Zogenix's pipeline will add to UCB's short-term and long-term epilepsy pipeline, as well as provide critical learnings in rare/orphan disease health ecosystems.
- Enhances UCB's top-line growth: FINTEPLA® was launched in the U.S. and Europe in 2020 and has significant potential for usage in other seizure types. It is expected that the proposed acquisition, if completed, will contribute to UCB's revenue growth upon closing and will be accretive to UCB's earnings in 2023.

**Transaction Terms, Approvals and Time to Closing**

Under the terms of the acquisition agreement, UCB, through a wholly-owned subsidiary, Zinc Merger Sub, Inc., will initiate a tender offer to acquire all outstanding shares of Zogenix for a purchase price of US$ 26.00 per share in cash, plus one non-tradeable CVR. The CVR will entitle holders to an additional cash payment of US$ 2.00 per share if a regulatory milestone related to approval of FINTEPLA® for treatment of seizures associated with Lennox-Gastaut syndrome (LGS) is achieved by or before December 31, 2023. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Zogenix's outstanding shares, receipt of required antitrust clearances, and other customary conditions. Upon the successful completion of the tender offer, UCB's acquisition subsidiary will be merged into Zogenix, and any remaining shares of common stock of Zogenix will be cancelled and converted into the right to receive the same consideration per share offered in the tender offer. The transaction is expected to close by the end of the second quarter of 2022. There can be no assurance any payments will be made with respect to the CVR.

*Potential Conflicts of Interest*

39.     The breakdown of the benefits of the deal indicates that Zogenix insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Zogenix.

40.     Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Name | Number of Shares Beneficially Owned (#) | Cash Consideration for Shares Beneficially Owned ($)(1) | Maximum Cash Consideration for CVRs in Respect of Shares Beneficially Owned ($)(2) |
|---|---|---|---|
| *Executive Officers* | | | |
| Stephen J. Farr, Ph.D.* | 92,022 | $ 2,392,572 | $ 184,044 |
| Michael P. Smith | 7,796 | $ 202,696 | $ 15,592 |
| Bradley S. Galer, M.D. | 22,964 | $ 597,064 | $ 45,928 |
| Shawnte M. Mitchell | 496 | $ 12,896 | $ 992 |
| Ashish M. Sagrolikar | 16,326 | $ 424,476 | $ 32,652 |
| Gail M. Farfel, Ph.D. | 16,047 | $ 417,222 | $ 32,094 |
| *Non-Employee Directors* | | | |
| Louis C. Bock | — | — | — |
| James B. Breitmeyer, M.D., Ph.D. | 1,250 | $ 32,500 | $ 2,500 |
| Cam L. Garner | 81,843(3) | $ 2,127,918 | $ 163,686 |
| Caroline M. Loewy | — | — | — |
| Erle T. Mast. | 3,027 | $ 78,702 | $ 6,054 |
| Mary E. Stutts | — | — | — |
| Renee P. Tannenbaum, Pharm.D. | 32,567 | $ 846,742 | $ 65,134 |
| Denelle J. Waynick | 584 | $ 15,184 | $ 1,168 |
| Mark Wiggins | 2,500 | $ 65,000 | $ 5,000 |

41.     Moreover, upon the consummation of the Proposed Transaction, the Recommendation Statement indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement as follows:

| Name | Number of Shares Subject to Unvested In the Money Options (#) | Cash Consideration for Unvested In the Money Options ($)(1) | Number of Shares Subject to Vested In the Money Options (#) | Cash Consideration for Vested In the Money Options ($)(1) | Number of CVRs Issued in Respect of In the Money Options (#) | Maximum Cash Payment for CVRs Issues in Respect of In the Money Options ($)(1) | Number of Shares Subject to Unvested Out of the Money Options (#) | Cash Consideration for Unvested Out of the Money Options ($) | Number of Shares Subject to Vested Out of the Money Options (#) | Cash Consideration for Vested Out of the Money Options ($)(1) | Number of Notional CVRs in Respect of Out of the Money Options (#) | Maximum Cash Payment for Notional CVRs in Respect of Out of the Money Options ($) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Executive Officers* | | | | | | | | | | | | |
| Stephen J. Farr, Ph.D.* | 70,001 | 506,807 | 520,992 | 6,479,329 | 590,993 | 1,181,986 | 82,500 | 0 | 82,500 | 0 | 165,000 | 105,600 |
| Michael P. Smith | 18,750 | 135,750 | 73,750 | 1,101,625 | 92,500 | 185,000 | 19,500 | — | 19,500 | 0 | 39,000 | 24,960 |
| Bradley S. Galer, M.D. | 22,500 | 162,900 | 245,375 | 3,908,480 | 267,875 | 535,750 | 19,500 | — | 19,500 | 0 | 39,000 | 24,960 |
| Shawnte M. Mitchell | 18,750 | 135,750 | 6,250 | 45,250 | 25,000 | 50,000 | 57,292 | — | 52,708 | 0 | 110,000 | 145,200 |
| Ashish M. Sagrolikar | 54,583 | 461,805 | 15,417 | 122,995 | 70,000 | 140,000 | 30,000 | — | 30,000 | — | 60,000 | 38,400 |
| Gail M. Farfel, Ph.D. | 22,500 | 162,900 | 149,539 | 2,133,420 | 172,039 | 344,078 | 17,500 | — | 17,500 | 0 | 35,000 | 22,400 |
| *Non-Employee Directors* | | | | | | | | | | | | |
| Louis C. Bock | 3,667 | 29,959 | 67,333 | 873,781 | 71,000 | 142,000 | — | — | — | — | — | — |
| James B. Breitmeyer, M.D., Ph.D. | 3,667 | 29,959 | 72,958 | 782,681 | 76,625 | 153,250 | — | — | — | — | — | — |
| Cam L. Garner | 3,667 | 29,959 | 58,333 | 754,981 | 62,000 | 124,000 | — | — | — | — | — | — |
| Caroline M. Loewy | 13,667 | 61,759 | 28,333 | 181,581 | 42,000 | 84,000 | — | — | — | — | — | — |
| Erle T. Mast | 3,667 | 29,959 | 74,833 | 956,781 | 78,500 | 157,000 | — | — | — | — | — | — |
| Mary E. Stutts | 13,667 | 61,759 | 28,333 | 181,581 | 42,000 | 84,000 | — | — | — | — | — | — |
| Renee P. Tannenbaum, Pharm.D. | 3,667 | 29,959 | 21,333 | 189,381 | 25,000 | 50,000 | — | — | — | — | — | — |
| Denelle J. Waynick | 13,667 | 61,759 | 28,333 | 181,581 | 42,000 | 84,000 | — | — | — | — | — | — |
| Mark Wiggins | 3,667 | 29,959 | 83,583 | 1,066,681 | 87,250 | 174,500 | — | — | — | — | — | — |

| Name | Number of Shares Subject to Company RSUs (#) | Cash Consideration for Unvested Company RSUs ($)(1) | Number of Shares Subject to Company PSUs (#) | Cash Consideration for Unvested Company PSUs ($)(1) | Number of CVRs in Respect of Company RSUs (#) | Maximum Cash Payment for CVRs in Respect of Company RSUs ($) | Number of CVRs in Respect of Company PSUs (#) | Maximum Cash Payment for CVRs in Respect of Company PSUs ($) |
|---|---|---|---|---|---|---|---|---|
| *Executive Officers* | | | | | | | | |
| Stephen J. Farr, Ph.D.* | 53,748 | 1,397,448 | 46,665 | 1,213,290 | 53,748 | 107,496 | 46,665 | 93,330 |
| Michael P. Smith | 14,656 | 381,056 | 12,500 | 325,000 | 14,656 | 29,312 | 12,500 | 25,000 |
| Bradley S. Galer, M.D. | 21,531 | 559,806 | 15,000 | 390,000 | 21,531 | 43,062 | 15,000 | 30,000 |
| Shawnte M. Mitchell | 9,375 | 243,750 | 12,500 | 325,000 | 9,375 | 18,750 | 12,500 | 25,000 |
| Ashish M. Sagrolikar | 39,531 | 1,027,806 | 25,000 | 650,000 | 39,531 | 79,062 | 25,000 | 50,000 |
| Gail M. Farfel, Ph.D. | 16,281 | 423,306 | 15,000 | 390,000 | 16,281 | 32,562 | 15,000 | 30,000 |

42.   In addition, certain employment agreements with certain Zogenix executives,

entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

| Named Executive Officer | Cash ($)(1)(2) | Equity ($)(3) | Perquisites/ Benefits ($)(4) | Total ($) |
|---|---|---|---|---|
| Stephen J. Farr, Ph.D. | 1,013,482 | 3,511,173 | 30,000 | 4,554,655 |
| Michael P. Smith | 637,716 | 946,098 | 30,000 | 1,613,814 |
| Shawnte M. Mitchell | 641,437 | 861,375 | 30,000 | 1,532,812 |
| Bradley S. Galer, M.D. | 657,215 | 1,243,248 | 30,000 | 1,930,463 |
| Ashish M. Sagrolikar | 669,093 | 2,397,039 | 30,000 | 3,096,132 |
| Gail M. Farfel, Ph.D. | 645,050 | 1,094,968 | 30,000 | 1,770,018 |

43.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44.     Thus, while the Proposed Transaction is not in the best interests of Zogenix, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Recommendation Statement**

45.     On February 1, 2022, the Zogenix Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

46.     Specifically, the Recommendation Statement fails to disclose material information

concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Recommendation Statement fails to disclose:

    a.   The specific reasoning as to why the Transactions Committee created by the Board to run the sales process contained Board members who were not disinterested or independent;

    b.   Adequate information regarding the specific powers of the Transactions Committee, including whether the committee had veto power over potential strategic alternatives;

    c.   Adequate reasoning as to why no it was necessary to engage multiple financial advisors;

    d.   Whether the terms of any confidentiality agreements entered during the sales process between Zogenix on the one hand, and any other third party (including UCB), if any, on the other hand, differed from one another, and if so, in what way;

    e.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including UCB) throughout the sales process, if any, would fall away; and

    f.   The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

*Omissions and/or Material Misrepresentations Concerning Zogenix's Financial Projections*

47.     The Recommendation Statement fails to provide material information concerning financial projections for Zogenix provided by Zogenix management and relied upon by BofA and SVB Leerink in its analyses.  The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

48.     Notably, in connection with its fairness opinion rendered to the Company Board regarding the Proposed Transaction, BofA notes that it reviewed, "certain internal financial and operating information with respect to the business, operations and prospects of the Company furnished to or discussed with BofA Securities by the Company's management, including certain financial forecasts relating to the Company prepared by the Company's management."  Similarly, SVB Leerink noted that in preparation for creating its fairness opinion it reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of the Company, including certain financial forecasts, analyses and projections relating to the Company prepared by the Company's management and furnished to SVB Leerink by the Company for purposes of SVB Leerink's analysis."

49.     The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Zogenix management provided to the Board, BofA and SVB Leerink.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

50.     With regard to the *Financial Projections* for Zogenix prepared by Zogenix management, the Recommendation Statement fails to disclose material line items for the following metrics:

            a.   Transaction-Related Expenses and Income, including all underlying necessary

inputs and assumptions, including specifically: specific expenses and income related to (i) milestones and royalty amounts payable by the Company under its license and prior acquisition agreements, (ii) milestones payable to the Company under its distribution agreement in Japan, and (iii) the potential receipt and sale of a priority review voucher for MT-1621;

b. Adjusted EBIT, including all underlying necessary inputs and assumptions, including specifically: Interest, Taxes, Depreciation and Amortization; and

c. Unlevered Free Cash Flow, including all underlying necessary inputs and assumptions, including specifically: income taxes, if profitable, net of projected impact of net operating losses, depreciation and amortization, and changes in net working capital.

51. The Recommendation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

52. This information is necessary to provide Plaintiff in her capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

53. Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of BofA or SVB Leerink's financial analyses, or make an informed decision whether to tender her shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by BofA*

54. In the Recommendation Statement, BofA describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

1  underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the

2  valuations or evaluate the fairness opinions.

3      55.    With   respect   to   the   *Selected   Publicly   Traded   Companies   Analysis*,   the

4  Recommendation Statement fails to disclose the following:

      a.   The specific inputs and assumptions used to determine the utilized enterprise

          value to PoS Adjusted revenue multiple reference range of 1.10x to 2.60x;

      b.   The utilized estimate of the net cash of the Company as of December 31, 2021;

      c.   The utilized value of the Convertible Notes as of December 31, 2021; and

      d.   The   utilized   number   of   fully-diluted   shares   of   Zogenix   common   stock

          outstanding.

11     56.    With   respect   to   the   *Selected   Precedent   Transactions   Analysis*,   the

12  Recommendation Statement fails to disclose the following:

      a.   The specific inputs and assumptions used to determine the utilized enterprise

          value to PoS Adjusted revenue multiple reference range of 1.50x to 4.50x as

          applied to the Company's 2025 PoS Adjusted Revenue Multiples;

      b.   The specific inputs and assumptions used to determine the utilized enterprise

          value to PoS Adjusted revenue multiple reference range of 1.25x to 4.00x as

          applied to the Company's 2026 PoS Adjusted Revenue Multiples;

      c.   The utilized estimate of the net cash of the Company as of December 31, 2021;

      d.   The utilized value of the Convertible Notes as of December 31, 2021;

      e.   The   utilized   number   of   fully-diluted   shares   of   Zogenix   common   stock

          outstanding;

      f.   The specific date on which each selected precedent transaction closed; and

      g.   The value of each selected precedent transaction.

25     57.    With   respect   to   the   *Discounted   Cash   Flow   Analysis*,   the   Recommendation

26  Statement fails to disclose the following:

      a.   The terminal value calculated for the Company;

b.   The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of negative 30% to negative 20%;

c.   The specific inputs and assumptions used to determine the utilized discount rate range of 9.00% to 12.00%

d.   The Company's weighted average cost of capital;

e.   The utilized estimate of the net cash of the Company as of December 31, 2021;

f.   The utilized value of the Convertible Notes as of December 31, 2021; and

g.   The utilized number of fully-diluted shares of Zogenix common stock outstanding.

58.   With respect to the *Present Value of Wall Street Analysts Price Targets* analysts, the Recommendation Statement fails to disclose the following:

a.   The specific price targets utilized and the identity of the analysts/firms that created them;

b.   The specific inputs and assumption used to determine the utilized discount rate of 10.50%.

59.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender her shares in favor of the Proposed Transaction.

60.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Zogenix stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by SVB Leerink*

61.   In the Recommendation Statement, SVB Leerink describes its fairness opinion and

the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

62.     With respect to the *SVB Leerink Analysis of Consideration*, the Recommendation Statement fails to disclose the following:

      a. The specific inputs and assumptions used to determine the utilized 64% probability of success milestone set forth in the CVR Agreement will be achieved and a payout date for the CVR of March 31, 2023;

      b. The specific inputs and assumptions used to determine the utilized discount rate range of 10% to 13%; and

      c. The company's weighted average cost of capital utilized.

63.     With respect to the *Discounted Cash Flow Analysis of SVB Leerink*, the Recommendation Statement fails to disclose the following:

      a. The terminal value calculated for the Company;

      b. The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of negative 30% to negative 20%;

      c. The specific inputs and assumptions used to determine the utilized discount rate range of 10.0% to 13.0%;

      d. The Company's weighted average cost of capital;

      e. The specific inputs and assumptions used to determine the utilized discount rate of 12.5% as applied to the Company shares closing price of $15.64 on January 18, 2022; and

      f. The utilized number of fully-diluted shares of Zogenix common stock outstanding.

64.     With respect to the *Publicly Traded Company Analysis of SVB Leerink*, the Recommendation Statement fails to disclose the following:

     a.   The specific inputs and assumptions used to determine the utilized enterprise value to net revenue multiple reference range of 3.8x to 9.1x as applied to the Company's 2022 net revenue estimates; and

     b.   The specific inputs and assumptions used to determine the utilized enterprise value to net revenue multiple reference range of 2.6x to 5.5x as applied to the Company's 2023 net revenue estimates.

65.    With respect to the *Selected Precedent Transactions Analysis of SVB Leerink*, the Recommendation Statement fails to disclose the following:

     a.   The specific date on which each selected precedent transaction closed; and

     b.   The value of each selected precedent transaction.

66.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender her shares in favor of the Proposed Transaction.

67.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Zogenix stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

## FIRST COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

68.    Plaintiff repeats all previous allegations as if set forth in full herein.

69.    Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

70.    Section 14(e) of the Exchange Act provides that in the solicitation of shares in a

tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

71.    The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

72.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

73.    The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

74.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

75.    Plaintiff has no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Defendants)

76.    Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

77.    Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

78.    Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

79.      SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

80.      Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

81.      The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to tender her shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

82.      Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

83.      Plaintiff repeats all previous allegations as if set forth in full herein.

84.      The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

85.      The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved,

ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

86.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Zogenix' business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

87.     The Individual Defendants acted as controlling persons of Zogenix within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Zogenix to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Zogenix and all of its employees. As alleged above, Zogenix is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act to disseminate a Recommendation Statement that does not contain any untrue statements of

material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 3, 2022

**BRODSKY & SMITH**

By: _____

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*